PEOPLE, PLAINTIFF AND APPELLEE, *v.* RUIZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in a Prosecution for a Crime Against Public Health.

No. 1514.—Decided June 25, 1920.

PUBLIC HEALTH—ADULTERATED MILK—INTENT.—The law penalizes the adulteration or dilution of milk ''with the intent'' to offer it for sale. It punishes likewise the person who causes or permits it to be offered for sale, or who sells, offers or keeps the same for sale, but it does not punish a person who simply has the milk in his possession with the intent, not yet demonstrated by any act, of selling it. The only incident of the crime with regard to which the law speaks of intent is when it is committed by the act of the adulteration or dilution of the milk. Where the law refers to the manner of having for sale adulterated or diluted milk it does not employ the words ''with the intent'' but refers only to the actual act of having or offering the milk for sale.

The facts are stated in the opinion.

*Mr. R. Sarriera Egozcue* for the appellant.

*Mr. J. E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The information in this case charges Pilar Ruíz with having adulterated milk with the intention of offering it for sale.

After a trial the defendant was found guilty and sen-

tenced to fifteen days in jail, and from that judgment he appealed to this court.

The first ground of appeal is that the information does not charge an offense which is defined and penalized by law.

The statute applicable to the case is the Act of March 10, 1910, to provide a punishment for adulterating milk or offering or keeping the same for sale.

On April 11, 1919, this court considered and construed that statute in a case similar to this (*People* v. *Camuñas,* 27 P. R. R. 288) and it was applied recently in the case of *People* v. *Pérez, ante,* page 554.

The act penalizes the adulteration or dilution of milk "with the intent" to offer it for sale. It likewise makes it an offense to cause or permit such milk to be offered for sale, or to sell, offer or keep the same for sale, but it does not penalize the act of simply having such milk in one's possession with the intention of selling it, if that intention has not been demonstrated by any act. This appears to be a subtle distinction, but we are considering a penal statute and it should be construed strictly.

The possession by a person of milk diluted with water with the intention of selling it might include, for example, the case of a citizen who has such milk in his private residence and in a moment of temptation mentally decides to sell it in that condition. Such a case does not fall within the terms of the act.

On the other hand, if a person is charged with actually having adulterated or diluted milk for sale in a milk-stall, for instance, then he is clearly charged with an offense within the terms of the act. It is true that in such a case he has not actually sold the milk and that the intent alone exists in connection with the sale, but such an intent was shown by the fact that he took the milk to the stall or other place of sale and kept the same there ready, as demonstrated by

the fact itself, for the purpose of consummating the illegal transaction. *People* v. *Pérez*, 23 P. R. R. 815.

The only incident of the offense with regard to which the act refers to the intention is the act of adulterating or diluting the milk. When it refers to the act of having the adulteration milk for sale it does not employ the words "with the intent," but refers only to the actual fact of having or offering the milk for sale.

Care should be exercised therefore in drafting informations so that offenses which should be investigated by the proper authorities and punished with all the rigor of the law may not secure immunity on account of a mere defect of form, for such offenses are not only fraudulent, but also are a direct attack upon the health of the public, especially in its most vulnerable part, namely, children, old people and invalids.

In view of the foregoing reasons we are constrained to reverse the judgment appealed from.

*Reversed.*

Chief Justice Hernández and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf took no part in the decision of this case.